David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
JEFF R.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF R.<br><br>             Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH; HP INC.; HP INC. MENTAL HEALTH/SUBSTANCE USE DISORDER PPO PLAN; and DOES 1 through 10,<br><br>             Defendants. | Case No.<br><br>**PLAINTIFF JEFF R.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; STATUTORY PENALTIES; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, Jeff R. herein sets forth the allegations of this Complaint against Defendants UNITED BEHAVIORAL HEALTH; HP INC.; HP INC. MENTAL HEALTH/SUBSTANCE USE DISORDER PPO PLAN; and DOES 1 through 10.

### PRELIMINARY ALLEGATIONS

### JURISDICTION

1.  Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502

1. (e) and (f), 29 U.S.C. Section 1132 (e) and (f), as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

## PARTIES

3. At all relevant times, HP INC. (HP) employed Plaintiff Jeff R.

4. HP does business in California as HP Computing and Printing Inc.

5. At all relevant times, Jeff R. participated in the HP Inc. Mental Health/Substance Use Disorder PPO plan, ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by HP.

6. United Behavioral Health ("UBH") is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California, and is the mental health claims administrator of the Plan. UBH operates under the brand name Optum.

7. At all relevant times, the Plan was an employee welfare benefit plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's mental health claim administrator, UBH.

## VENUE

8. Venue is appropriate in this District in that all Defendants reside in this district. UBH is a corporation organized under California law, with its principal place of business in San Francisco, California. HP has its principal place of business in Palo Alto, California.

## FACTS

9. The Plan guarantees, warrants, and promises Covered Health Services for HP employees and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

2
**COMPLAINT**                                                                                      **CASE NO.**

10. K.R. is Jeff R.'s daughter, and was, at all relevant times, a beneficiary of the Plan.

11. At all relevant times, the Plan was in full force and effect.

12. Mental Health claims under the Plan were at all relevant times administered by UBH.

13. UBH is a subsidiary of UnitedHealth Group Inc.

14. UBH does business as Optum.

15. UBH uses guidelines referred to as "Optum Level of Care Guidelines: Mental Health Conditions" when administering mental health claims.

16. No Plan document sets forth the Optum Level of Care Guidelines for Mental Health Conditions.

17. The Plan guarantees coverage for inpatient and outpatient treatment for mental health conditions.

18. California's Mental Health Parity Act, Cal. Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), 29 U.S.C. § 1185a, specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

19. K.R. suffers from, and was diagnosed with, *inter alia,* reactive attachment disorder, post-traumatic stress disorder, and oppositional defiant disorder.

20. Jeff R. adopted K.R. from the Democratic Republic of the Congo. She was reported to be 2 years and 10 months old at the time of her adoption, however the family later learned that she was likely 2 to 4 years older than her reported age. Upon arrival to the United States, K.R. suffered from malnutrition, malaria, Giardia, parasites, and lead poisoning, and she was nonverbal.

21. K.R. displayed symptoms of, *inter alia*, post-traumatic stress disorder immediately after her arrival to the United States. She engaged in fits of screaming rage lasting

for hours.  She also displayed inappropriate sexualized behaviors with adults and peers alike, sounding alarm bells that she may have been victimized prior to her adoption.

22. Due to her mental health issues, Jeff R. enrolled K.R. in therapy.  K.R. was diagnosed with reactive attachment disorder (RAD) and post-traumatic stress disorder (PTSD). K.R. had difficulty engaging in or benefiting from therapy, as she would behaviorally revert during sessions, becoming nonverbal and crawling on the floor.

23. K.R. decompensated further after starting kindergarten. She stole items from teachers and peers. She repeatedly bit, scratched, punched, kicked, and pulled hair of family, peers, and teachers.

24. By the age of 7, K.R. was participating in occupational therapy twice a week. She also saw a psychologist and a psychiatrist regularly.

25. Despite ongoing mental health intervention, K.R.'s mental and behavioral health continued to deteriorate. She started lighting things on fire in the home, and threatened her siblings and parents with knives, resulting in police intervention.

26. Separately, she started to physically harm herself. K.R. pulled out five molars and began cutting herself with knives.

27. As a result of her decompensating mental health issues, K.R. was admitted to the psychiatric ward at St. Alphonsus Behavior Health for eight days. Within one month of her release, K.R. had an episode in which she locked herself in a bathroom and cut her arms and legs with a razor, and was admitted to the psychiatric ward for an additional six nights.

28. At the age of 8, on the recommendation of her medical providers, K.R. entered treatment at NW Passage Hope & Healing ("NW Passage") in Wisconsin. She spent 30 days at NW Passage undergoing psychiatric evaluations and testing.  Her treating providers at NW Passage determined that K.R. required long-term residential care.

29. The Plan, by and through its behavioral/mental health claims administrator, UBH, approved the claims for K.R.'s treatment and care at NW Passage.

30. Upon completion of her treatment at NW Passage, and at the recommendation of her treating providers, K.R. was transferred to Intermountain Children's Home ("Intermountain") in Montana.

31. Subsequent to her admission to Intermountain, K.R. continued to display self-injurious behaviors.

32. At all times relevant, K.R.'s treatment at Intermountain was medically necessary, based upon the reasoned medical opinions of her mental health providers.

33. Plaintiff filed claims for mental health benefits with Defendants for K.R.'s treatment Intermountain.

34. UBH approved approximately 2 months of K.R.'s treatment at Intermountain. Despite no significant improvement in her mental health conditions, UBH then denied Plaintiff's claims for K.R.'s continued treatment at Intermountain.

35. Plaintiff timely appealed these denials.

36. UBH denied Plaintiff's appeals. Rather than acknowledging K.R.'s long history of mental health problems, including, but not limited to her need for treatment at the residential treatment level of care, UBH denied K.R.'s treatment on the basis that she "has long standing, chronic oppositional and limit-testing behaviors. She was not requiring active medication changes to manage these behaviors. She was learning to use coping skills to manage her frustration. It appears that while she continues to require treatment for her symptoms, her care could continue in a less intensive setting."

37. UBH's denial did not address K.R.'s suicidal behavior nor her physical assaults toward staff and peers while in treatment at Intermountain.

38. UBH's denial also failed to account for K.R.'s inability to access or benefit from multiple forms of outpatient treatment attempted prior to her admission at Intermountain, including with four therapists, two psychiatrists, long-term occupational therapy, and two courses of acute psychiatric hospital inpatient treatment.

39. Despite the mandates of the California and Federal Mental Health Parity Acts, the medical necessity of K.R.'s treatment at Intermountain based on her symptoms and

diagnoses, and the medical consensus among her treating providers, Defendant UBH denied the Intermountain appeals.

40. Plaintiff exhausted all administrative remedies regarding the denial of K.R.'s mental health benefits.

41. As a result, Plaintiff was forced to pay for K.R.'s care and treatment at Intermountain from his own personal funds.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Recovery of Benefits Due Under an ERISA Benefit Plan**
(Against United Behavioral Health, HP Inc., and HP Inc. Mental Health/Substance Use Disorder PPO Plan, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))

42. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

43. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

44. At all relevant times, Plaintiff and his daughter, K.R. were insured under the health care Plan at issue herein, and Plaintiff's daughter, K.R., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

45. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

46. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

### SECOND CAUSE OF ACTION
**Statutory Penalties**
(Against Defendants United Behavioral Health; HP Inc.; and the HP Inc. Mental Health/Substance Use Disorder PPO Plan
29 U.S.C. § 1132)

47. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

48. On or about the date of K.R.'s admission to Intermountain, and repeatedly thereafter, Plaintiff made a proper request for documents to which he was entitled under 29 U.S.C. § 1132 and other relevant sections of ERISA. These requests included, but were not limited to, requests for copies his complete summary plan description, as well as those Plan sections and provisions pertaining specifically to mental and behavioral health benefits. All of these documents were not provided in response to that request nor to further, repeated requests. Defendants' failure to provide said documents within thirty (30) days of Plaintiff's original request entitles Plaintiff to civil penalties of $110 per day per document request, as described in 29 U.S.C. § 1132(c)(1) and as set forth in 29 C.F.R. § 2575.502 c-1. Said penalties begin on the thirty-first day following the date Defendants received Plaintiff's document requests.

49. As a direct and proximate result of the foregoing actions and omissions, Defendants have breached their obligations and duties under ERISA, as plan administrators, claims administrators, and plan fiduciaries.

50. As a further direct and proximate result of the foregoing actions, Plaintiff has suffered irreparable harm by not being able to full and fairly prosecute his claim through an appropriate administrative appeal process, and by not being able to fully and fairly preserve the administrative record pertaining to his claim.

## PRAYER FOR RELIEF
### AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

1. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

2. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

3. Order statutory penalties available under 29 U.S.C. § 1132(c)(1);

4. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

5. Provide such other relief as the Court deems equitable and just; and

6. For such other and further relief as the Court deems just and proper.

Dated: June 25, 2019                         Respectfully submitted,

**DL LAW GROUP**

By: /s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, Jeff R.

**COMPLAINT**                                                                                      **CASE NO.**